[No. 34290-1-II.  Division Two.  April 17, 2007.]

THE STATE OF WASHINGTON, *Appellant*, v. SCOTT MICHAEL LIDEN, *Respondent*.

*Edward G. Holm, Prosecuting Attorney,* and *James C. Powers, Deputy,* for appellant.

*Sharonda Thompson Amamilo* (of *The Law Office of Amamilo and Associates*), for respondent.

¶1 HUNT, J. — The State appeals the trial court's dismissal of Scott Michael Liden's jury conviction for first degree robbery of a financial institution. The State (1) argues that there was sufficient evidence for the jury's verdict, specifically that Liden robbed a "financial institution" within the meaning of RCW 9A.56.200(1)(b), and (2) asks us to reinstate the conviction for first degree robbery. Liden cross-appeals the trial court's entry of a conviction for second degree robbery as a lesser included offense in place of the dismissed first degree robbery conviction. Liden contends that (1) the legislature did not contemplate second degree robbery as a lesser included offense for first degree robbery of a financial institution and (2) therefore, the trial court's substituting second degree for first degree robbery was error.

¶2 Holding that the State provided sufficient evidence that the bank Liden robbed was a "financial institution," we (1) reverse the trial court's substitution of second degree robbery for the jury's first degree robbery conviction and (2) remand to the trial court to reinstate Liden's first degree robbery conviction and to resentence him accordingly.

## FACTS

### I. Armed Robbery

¶3 Neither party disputes the essential facts. On February 5, 2004, Liden entered Heritage Bank in Tumwater, Washington, and stood in line awaiting assistance. When Holly Tagavilla, a Heritage Bank teller, motioned Liden to approach her window, Liden told her that he wished to make a withdrawal from his checking account. Tagavilla gave him a bank counter check,[1] which Liden filled out and returned to Tagavilla. Liden had written the counter check out for cash to Steve Wilson, but he had failed to provide an account number.

¶4 When Tagavilla returned the counter check to Liden for the account number, Liden turned the check over and wrote the words "I have a gun" on the back of the check. Report of Proceedings (RP) (Dec. 5, 2005) at 9. Liden then requested 100- and 20-dollar bills. As Liden demanded, Tagavilla gave Liden approximately $1,800 in 100- and 20-dollar bills.

¶5 When Liden left the bank, Tagavilla screamed out that she had been robbed, prompting the bank to lock down quickly. The police arrived shortly thereafter.

¶6 Several days later, police arrested Liden at a bus station in Salem, Oregon.

### II. Procedure

¶7 The State charged Liden with first degree robbery in violation of RCW 9A.56.200(1)(a).

### A. Trial

¶8 At trial, the State elicited testimony from three eyewitnesses who had been at the bank during the robbery:

---

[1] "Counter checks" are blank checks that banks provide for the convenience of their customers (definition from Webster's Third New International Dictionary 519 (1976)).

Tagavilla, John Morris, and Steve Venable. Tagavilla testified that she was employed as a bank teller at Heritage Bank and that she was working at the time Liden threatened her and demanded the bank's money. Tagavilla also identified the robbery note Liden had written on the back of the counter check before he handed it to her and noted that the back of the counter check contained the phrase, "Reserved for Financial Institution Use." Ex. 3. The trial court admitted the counter check into evidence.

¶9 Morris testified that (1) at the time of the incident, he was at the Tumwater branch of Heritage Bank to make a financial deposit because he regularly did his banking there; (2) he observed Liden as they both were waiting in line for a bank teller; and (3) Liden asked him where the bank's deposit slips were located.

¶10 Venable testified that he had entered the bank just after the incident and heard Tagavilla scream that she had been robbed. At the same time, he saw Liden run past him, exit the bank, and run away in a southerly direction.

¶11 At the close of the State's case-in-chief, Liden moved to dismiss the first degree robbery charge. He argued that the State had failed to elicit sufficient evidence that the robbery had occurred at a "financial institution" as defined in RCW 7.88.010(6) or RCW 35.38.060. The trial court denied Liden's motion, ruling that a reasonable juror could infer that Heritage Bank was a "financial institution" based on the circumstantial evidence.

¶12 Liden submitted testimony to support a diminished capacity defense. He called a witness who testified that Liden was in a cocaine-induced psychosis at the time of the robbery.

¶13 After both parties rested, Liden again moved to dismiss the first degree robbery charge based on insufficient evidence. The trial court again denied the motion.

¶14 Liden proposed, and the trial court gave, a jury instruction that second degree robbery is a lesser included offense of first degree robbery. The trial court also in-

structed the jury on the definition of a "financial institution" based on the statutory language.[2] The record does not show that Liden objected to this latter instruction.

¶15 The jury found Liden guilty of first degree robbery.

## B. Posttrial Motion

¶16 Liden filed a CrR 7.4 motion to arrest judgment for insufficiency of evidence. He again argued that the State had failed to provide direct evidence that Heritage Bank was lawfully engaged in business or possessed lawful authorization to accept deposits, as the statute required for a first degree robbery conviction. Liden asked the trial court to dismiss the jury's first degree robbery verdict and to substitute a conviction for the lesser included offense of robbery in the second degree.

¶17 The trial court noted that there was plenty of circumstantial evidence to prove that Liden committed a robbery against a "financial institution." Nonetheless, the trial court ruled that the State must provide direct evidence of Heritage Bank's legal status as a "financial institution" and that the State had failed to sustain this burden. The trial court stated:

> I'm going to find it is necessary to show that a bank is lawfully engaged in business through some state certification in order to convict an individual of robbery in the first degree, and I find that there was not sufficient evidence to meet that element of this crime.

RP (Dec. 22, 2005) at 18.

---

[2] Instruction 10 stated:

Financial institution means a bank, trust company, mutual savings bank, savings and loan association, or credit union authorized by federal or state law to accept deposits in this state.

Financial institution also means any state bank or trust company, national banking association, stock savings bank, mutual savings bank, or savings and loan association, which institution is located in this state and lawfully engaged in business.

Clerk's Papers at 112. The two paragraphs of this instruction correspond to RCW 7.88.010(6) and RCW 35.38.060, respectively.

¶18 The trial court dismissed the jury's first degree robbery conviction, found sufficient facts to convict Liden of second degree robbery, substituted a second degree robbery conviction for the first degree robbery conviction, and sentenced Liden for second degree robbery.

¶19 The State appeals the trial court's vacation of the jury's verdict; Liden cross-appeals.

## ANALYSIS

### I. SUFFICIENCY OF EVIDENCE

¶20 The State argues that (1) the trial court erred in ruling that the State needed and failed to provide direct evidence that the bank was "lawfully engaged in business through some state certification," RP (Dec. 22, 2005) at 18, in order to sustain the jury's first degree robbery conviction; (2) the jury properly relied on circumstantial evidence that Liden committed a robbery against a "financial institution" within the meaning of RCW 9A.56.200(1)(b); and (3) the trial court erred in setting aside the jury's first degree robbery conviction and substituting a second degree robbery conviction.

¶21 To resolve these issues, we must first determine what the legislature meant when it used the term "financial institution" in defining the crime of first degree robbery. We must then determine whether the circumstantial evidence was sufficient to show that the Tumwater branch of Heritage Bank is such a "financial institution." We address each issue in turn.

### A. Standards of Review

#### 1. Challenge to sufficiency of evidence

¶22 "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the

prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Salinas*, 119 Wn.2d at 201. Moreover, circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

¶23 Credibility determinations are for the trier of fact and are not subject to appellate review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We must defer to the jury on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

## 2. Statutory construction

¶24 When reviewing a statute, we must give effect to the legislature's intent. Our review begins with the plain language of the statute. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). When a statute is unambiguous, we determine legislative intent from the statutory language alone. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994); *In re Residence of Eaton*, 110 Wn.2d 892, 898, 757 P.2d 961 (1988). When interpreting statutes, we must avoid absurd results. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003).

## B. "Financial Institution"

¶25 Under RCW 9A.56.200(1)(b), a person commits first degree robbery when "[h]e or she commits a robbery within and against a financial institution as defined in RCW 7.88.010 or 35.38.060." But RCW 9A.56.200 does not mention the type of evidence necessary to prove that the defendant committed first degree robbery against a "financial institution."[3]

---

[3] *Webster's Dictionary* defines a "bank" as an "establishment for the custody, loan, exchange, or issue of money, for the extension of credit, and for facilitating the transmission of funds by drafts or bills of exchange; . . . an institution incorpo-

¶26 RCW 7.88.010(6) defines a "financial institution" as "a bank, trust company, mutual savings bank, savings and loan association, or credit union authorized by federal or state law to accept deposits in this state." RCW 35.38.060 defines a "financial institution" as "a branch of a bank engaged in banking in this state in accordance with RCW 30.04.300, and any state bank or trust company, national banking association, stock savings bank, mutual savings bank, or savings and loan association, which institution is located in this state and lawfully engaged in business."

¶27 Liden persuaded the trial court and argues to us that the statutory definition of "financial institution" requires direct evidence. He argues that the definition's words—"authorized by federal or state law to accept deposits in this state" (RCW 7.88.010(6))—show that the legislature requires something more than circumstantial evidence to prove an essential element of the crime of first degree robbery. This argument fails.

¶28 The legislature included the phrase "financial institution" in the definitions of eight different crimes in the Washington Criminal Code.[4] Nowhere in any of these criminal statutes has the legislature required the State to produce direct evidence, in addition to circumstantial evidence, to prove that a particular enterprise is a "financial institution" as an element of a crime. In our view, Liden's reasoning—the State must submit direct, rather than circumstantial evidence—would produce an absurd interpretation of these "financial institution" statutes. As we note above, we interpret the legislature's statutes to avoid absurd results. *See J.P.*, 149 Wn.2d at 450.

¶29 Further avoiding an absurd result, we presume that the legislature is well aware of Washington's long-standing legal principle that a criminal conviction may rest solely on

rated for performing one or more of such functions." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 172 (1976).

[4] *See e.g.*, RCW 9A.56.290 (unlawful factoring of transactions); RCW 9A.56.320 (financial fraud); RCW 9A.82.170 (wrongful disclosure of financial institution records); RCW 9A.83.020 (money laundering).

circumstantial evidence, which is equally reliable as direct evidence. *Delmarter*, 94 Wn.2d at 638. And we decline to assume that the legislature intended to depart from this long-standing principle and to create an anomaly for first degree robbery—requiring direct evidence, in addition to circumstantial evidence, that the robbed bank was a certified "financial institution."[5]

¶30 We hold, therefore, that in enacting RCW 9A.56-.200(1)(b), the legislature did not intend to require the State to provide direct evidence that a robbed bank is a "financial institution," certified or otherwise; assuming its sufficiency, circumstantial evidence will suffice.

## C. Sufficient Circumstantial Evidence

¶31 We further hold that the State produced sufficient evidence that Liden committed first degree robbery against a "financial institution."[6] First, Liden's robbery note, which he wrote on the back of the counter check, contained the printed words, "Reserved for *Financial Institution* Use."[7] Ex. 3 (emphasis added). Second, Tagavilla testified that she was a Heritage Bank employee and that Liden threatened her while she was working inside Heri-

---

[5] We also note that although there is no published Washington State case law directly on point, federal courts have upheld robbery convictions against financial institutions based on circumstantial evidence. *See United States v. Allen*, 88 F.3d 765, 769-70 (9th Cir. 1996), *cert. denied*, 520 U.S. 1202 (1997), and *United States v. Chapel*, 41 F.3d 1338, 1340 (9th Cir. 1994) ("[T]he defendant is not entitled to have the bank's insured status proven solely by direct evidence."), *cert. denied*, 514 U.S. 1135 (1995). In *Allen*, the government needed to demonstrate that the bank in question was federally insured in order to prosecute the defendant under 18 U.S.C. § 1014. 88 F.3d at 768. Although the government did not produce direct testimony that the bank was federally insured, it produced two exhibits that contained the words "Member FDIC [Federal Deposit Insurance Corporation]." *Allen*, 88 F.3d at 769. The Ninth Circuit held that, in the light most favorable to the prosecution, these documents alone were sufficient to demonstrate the bank's federally insured status. *Allen*, 88 F.3d at 769-70.

[6] Sufficient proof of the other elements of first degree robbery is not an issue in this appeal.

[7] We note that this printing on the back of the bank slip is similar to the "Member FDIC" documents that the Ninth Circuit found to be sufficient circumstantial evidence of another bank's federally insured status in *Allen*, 88 F.3d at 769-70.

tage Bank. Third, the remaining eyewitnesses testified they were on the premises to make bank deposits (i.e., *banking* activity) when they witnessed Liden both before and after the robbery.

¶32 Liden having failed to persuade us that circumstantial evidence is insufficient to show that the robbery occurred at a "financial institution," we hold that the record contains sufficient evidence to support the jury's first degree robbery conviction. Therefore, we reinstate the jury's verdict for first degree robbery.

II. Lesser Included Offense—Second Degree Robbery

¶33 In his cross-appeal, Liden argues that the trial court erred in sentencing him for robbery in the second degree because the legislature did not intend to include second degree robbery as a lesser included offense for first degree robbery of a financial institution. Because we reverse the trial court's vacation of the jury's first degree robbery conviction and remand for reinstatement of that verdict, this cross-appeal issue is moot and we need not address it.

¶34 Reversed and remanded to the trial court to reinstate the jury's first degree robbery conviction and to resentence Liden for that crime.

Armstrong and Penoyar, JJ., concur.