# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48655-5-II |
| Respondent, | |
| v. | |
| JONATHAN WATSON, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Jonathan Watson appeals his conviction and sentence for robbery in the first degree of a financial institution. We conclude that sufficient evidence supported Watson's conviction because, when taken in the light most favorable to the State, a reasonable jury could have found that the credit union Watson robbed was a financial institution "authorized by federal or state law to accept deposits"[1] in Washington State. In addition, the trial court did not err by imposing a persistent offender sentence because the Utah and Washington offenses were factually comparable.[2] We affirm.

## FACTS

In the late afternoon of December 27, 2013, a man later identified as Watson walked into the Lacey branch of the Navy Federal Credit Union (NFCU). He approached a teller and handed

---

[1] RCW 7.88.010(6).

[2] Watson filed a statement of additional grounds. He does not raise any substantive issues, but asserts that his appellate attorney mistakenly cited to an erroneous case citation, which we acknowledge.

her a note demanding money and stating that he had a gun. When the teller did not move fast enough, Watson stated that if she did not hurry, he would kill her. The teller complied. RP at 184.

While handing him money, the teller gave Watson a stack of rubber-banded $20 bills. The stack had a Global Positioning System (GPS) device between the bills used for the purpose of tracking bank robbers. After Watson quickly left the building, another employee locked the doors and called the police.

Shortly thereafter, the police tracked down a yellow truck using the GPS coordinates from the stack of bills. They stopped the truck and placed Watson and his accomplice, the driver of the vehicle, in custody.

A police officer went back to NFCU, and the teller agreed to accompany the officer to the stopped truck to identify Watson. She identified Watson as the man who robbed NFCU. In a subsequent search of the truck, the police found a number of items linking Watson to the robbery and a backpack containing a large quantity of money and the GPS device. The police did not find a firearm. After booking Watson into jail, a small baggie of methamphetamine was found inside his wallet.

The State charged Watson with robbery in the first degree of a financial institution[3] and unlawful possession of a controlled substance.[4] The State filed a notice that it intended to seek a sentence of total confinement for life without the possibility of release based upon a conviction for Watson's current robbery charge and two prior felony convictions the State argued were considered "most serious offenses" in the state of Washington. Clerk's Papers (CP) at 4.

---

[3] RCW 9A.56.200(1)(b).

[4] RCW 69.50.4013(1).

2

At trial, several NFCU employees testified as to the credit union's business. The teller who Watson robbed testified as follows:

> Q. On December 27, 2013 was [NFCU] an institution that accepted deposits as a financial institution?
> A. Yes.
> Q. What are some of the services . . . offered[?]
> A. We were a cash branch. We offered cash deposits, cash withdrawals, credit card payments, loan payments. You could apply for all of the above accounts. We were a full service credit union during our operating hours.
> Q. [NFCU], is that a national credit union institution?
> A. Yes.

Report of Proceedings (RP) at 120. Another bank employee likewise testified that NFCU accepted deposits as a financial institution in the state of Washington. NFCU's branch manager also testified:

> Q. Is [NFCU] a financial institution that operates in the state of Washington?
> A. Yes.
> . . . .
> Q. Is [NFCU] regulated by a federal government agency with regard to its deposits?
> A. Yes, it's the National Credit Union Association, NCUA.
> Q. And are the deposits that are kept at [NFCU] insured by that same institution?
> A. Yes.
> . . . .
> Q. Does [NFCU] accept deposits as a financial institution under the federal and state laws?
> A. Yes.

CP at 483-84.

Without objection from either party, the trial court instructed the jury. On robbery in the first degree, the court gave the following instructions:

> A person commits the crime of robbery in the first degree when . . . he or she commits a robbery within and against a financial institution . . .
> . . . .
> "Financial institution" means a bank, trust company, mutual savings bank, savings and loan association, or credit union authorized by federal or state law to accept deposits in this state.

3

. . . .

> [T]he taking was against the person's will by the defendant's . . . use or threatened use of immediate force, violence, or fear of injury to that person or to that person's property or to [the] person or property of another.

CP at 121 (Instr. 13), 124 (Instr. 16), 126 (Instr. 18).

The jury found Watson guilty of robbery in the first degree and unlawful possession of a controlled substance.

At sentencing, the State presented documents in support of its position that Watson should be sentenced as a persistent offender to life without the possibility of release. The State included a statement of Watson's criminal history in Washington. The statement included five convictions in 1981 for robbery in the first degree. The State argued that any one of these robbery in the first degree convictions counted as a first strike.

As to the second strike, the State submitted documents from Utah showing that in March 2000, Watson pled guilty to attempted robbery[5] and theft. The statement on plea of guilty listed the elements of the offenses and Watson's conduct as follows:

> **The elements of the crime(s) of which I am charged are as follows:**
> . . . .
> 1) Attempt to take property from a third party by force or threat.
> 2) Attempt to appropriate property of another unlawfully and without permission with a purpose to deprive.
>
> **My conduct** . . . **for which I am criminally liable that constitutes the elements of the crime(s) charged is as follows:**
> . . . .
> 1) On September 3, 1999, at 2280 S. Highland Drive I attempted to steal beer by means of a threat of harm to the employee of the convenience store located there;
> 2) On September 3, 1999, at 209 So[uth] 1300 East I attempted to take an 18 pack of beer and leave the premises without paying for it.

CP at 187.

---

[5] UTAH CODE ANN. § 76-6-301 (1999).

The State also submitted to the trial court the charging information from Utah that described the facts of Watson's crimes:

[A]t 2280 South Highland Drive . . . [an employee of the store] saw [Watson] walking out of the store carrying an 18 pack of Natural Light Beer. [The employee] followed [Watson] . . . and said, "Hey, you didn't pay for that stuff." [Watson] responded by saying "Is it worth your life?" as he continued walking to his car. [The employee] again told [Watson] he needed to pay for the beer and [Watson] again asked if it was worth his life. Finally, as he was still following [Watson] to his car . . . [Watson] said, "If you follow me, I'll kill you."

[A]t 209 South 1300 East, [Watson] . . . came into the store and took an 18 pack of Bud Light beer. [The employee] states that she confronted [Watson] and he responded "The beer is not worth your life."

CP at 184.

The State argued that, legally and factually, the attempted robbery in Utah was equivalent to Washington's robbery in the second degree, and that it should count the Utah attempted robbery conviction as a second strike. It argued that Watson's current conviction for robbery in the first degree counted as a third strike.

Watson did not dispute that the Utah conviction existed. He instead argued, in part, that the Utah conviction was neither legally nor factually equivalent to a Washington strike offense.

The trial court found that Utah's attempted robbery statute was substantially similar to Washington's statute for robbery in the second degree. It also found that Watson's conduct underlying the Utah conviction would have violated Washington's robbery statute. The court rejected Watson's arguments and sentenced him as a persistent offender to life without the possibility of early release for robbery in the first degree, and 24 months for unlawful possession of a controlled substance. Watson appeals his robbery in the first degree conviction and sentence.

5

ANALYSIS

I.      SUFFICIENT EVIDENCE

Watson seems to argue that insufficient evidence exists to support his conviction for first degree robbery of a financial institution because there is no direct evidence that NFCU was a financial institution authorized by federal or state law to accept deposits in Washington.  We disagree.

A.      STANDARDS OF REVIEW

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.  *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009).  In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it.  *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010).  "These inferences 'must be drawn in favor of the State and interpreted most strongly against the defendant.'"  *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).  In addition, circumstantial evidence and direct evidence are equally reliable in a sufficiency of evidence challenge.  *State v. Jackson*, 145 Wn. App. 814, 818, 187 P.3d 321 (2008).

Interpretation of a statute is a question of law we review de novo.  *Engel*, 166 Wn.2d at 576.  Our review begins with the plain language of the statute.  *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003).  "When the plain language is unambiguous . . . the legislative intent is apparent, and we will not construe the statute otherwise."  *J.P.*, 149 Wn.2d at 450.  When interpreting statutes, we must avoid absurd results.  *J.P.*, 149 Wn.2d at 450.

B.     "FINANCIAL INSTITUTION"

A person commits robbery in the first degree when "[h]e or she commits a robbery within and against a financial institution as defined in RCW 7.88.010 or 35.38.060." RCW 9A.56.200(1)(b). A "[f]inancial institution" is "a bank, trust company, mutual savings bank, savings and loan association, or credit union authorized by federal or state law to accept deposits in this state." RCW 7.88.010(6). *See also* RCW 31.12.402; 12 U.S.C. § 1757.

At trial, three NFCU employees testified that NFCU accepted deposits as a financial institution in the state of Washington. One employee testified that NFCU was a full-service credit union that offered cash deposits, cash withdrawals, credit card payments, and loan payments. NFCU's branch manager testified that with regard to the deposits, NFCU was regulated and insured by the National Credit Union Administration (NCUA), a federal government agency. She also testified that NFCU accepted deposits as a financial institution under federal and state laws. While they did not directly state that NFCU was authorized to accept deposits, the circumstantial evidence sufficiently proved the authorization.

*State v. Liden*, 138 Wn. App. 110, 156 P.3d 259 (2007), supports the position that NFCU was a "financial institution." In *Liden*, the defendant argued post-trial that insufficient evidence supported his conviction for robbery in the first degree of a financial institution because no direct evidence existed that the bank he robbed was a "financial institution." 138 Wn. App. at 115. The defendant wrote his robbery note on the back of a counter check at the bank. *Liden*, 138 Wn. App. at 114. The counter check contained the words, "Reserved for Financial Institution Use." *Liden*, 138 Wn. App. at 114. The teller who was robbed testified that she was an employee of the bank, and other witnesses testified that they were at the bank to make deposits. *Liden*, 138 Wn. App. at 119-20.

*Liden* concluded that sufficient circumstantial evidence existed to prove that the bank was a "financial institution." 138 Wn. App. at 119. The court declined to require direct evidence to prove that an enterprise was a "financial institution" and concluded that, assuming its sufficiency, circumstantial evidence would suffice. *Liden*, 138 Wn. App. at 118-19.

Here, the NFCU employees testified that the credit union accepted deposits as a financial institution under state and federal law, and that it was regulated and insured by the NCUA. A rational trier of fact could have found that the State proved NFCU was a "financial institution" beyond a reasonable doubt. Therefore, Watson's sufficiency of the evidence argument fails.

II.    PERSISTENT OFFENDER SENTENCE

Watson next argues that the trial court erred by imposing a "three strikes" or persistent offender sentence because his prior Utah conviction for attempted robbery was neither legally nor factually equivalent to a Washington "strike offense."[6] Br. of Appellant at 17. We conclude that the offenses are factually comparable.

In Washington, a defendant found to be a "persistent offender" is sentenced to life in prison without the possibility of release. RCW 9.94A.570. A persistent offender is one who has been convicted in this state of any felony considered a "most serious offense" and, prior to the commission of such offense, has been convicted of a "most serious offense" on at least two separate occasions. RCW 9.94A.030(38)(a)(i)-(ii).

An out-of-state conviction may count as a strike if it is comparable to a most serious offense in Washington. RCW 9.94A.030(38)(a)(ii); RCW 9.94A.030(33)(u). "Out-of-state convictions

---

[6] For purposes of this opinion we use the terms "most serious offense" and "strike" interchangeably.

for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law." RCW 9.94A.525(3).

We utilize a two-part test to determine the comparability of an out-of-state offense. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007). First, the sentencing court determines whether the out-of-state offense is legally comparable—"that is, whether the elements of the [out-of-state] offense are substantially similar to the elements of the Washington offense." *Thiefault*, 160 Wn.2d at 415.

If the elements of the out-of-state offense are broader than its Washington counterpart, the sentencing court then determines whether the offense is factually comparable—"that is, whether the conduct underlying the [out-of-state] offense would have violated the comparable Washington statute." *Thiefault*, 160 Wn.2d at 415. In making the factual comparison, the sentencing court may rely on facts in the out-of-state record that are admitted, stipulated to, or proved beyond a reasonable doubt. *Thiefault*, 160 Wn.2d at 415.

Robbery in the second degree and attempted robbery in the second degree are considered most serious offenses. RCW 9.94A.030(33)(o). A person commits robbery in the second degree if he or she commits a robbery. RCW 9A.56.210. Robbery is defined as the unlawful taking of personal property from the person of another, or in the person's presence, against their will "by the use or threatened use of immediate force, violence, or fear of injury" to that person or their property or the person or property of anyone. RCW 9A.56.190

In 2000, Watson entered a guilty plea in Utah for attempted robbery. The Utah statute stated that a person commits robbery if:

> (a) the person unlawfully and intentionally takes or attempts to take personal property in the possession of another from his person, or immediate presence, against his will, by means of force or fear; or

9

(b) the person intentionally or knowingly uses force or fear of immediate force against another in the course of committing a theft.

UTAH CODE ANN. § 76-6-301.[7]

Watson contends that the elements of robbery under the Utah statute are broader than its Washington counterpart. He also argues that his Utah conviction for attempted robbery is factually dissimilar from a Washington attempted robbery. In both instances, he focuses on the "immediate force" requirement which is not an element in all of the alternative ways robbery can be committed under the Utah statute. Regardless of whether the Utah robbery statute is legally comparable to our Washington statute, we conclude that Watson's conduct in the Utah robbery would have violated Washington's robbery statute.

At sentencing, the State provided the trial court with Watson's plea statement to the Utah attempted robbery. It stated, "On September 3, 1999, at 2280 S. Highland Drive I attempted to steal beer by means of a threat of harm to the employee of the convenience store located there[.]" CP at 187. Other documents that the State submitted showed that Watson walked out of a store with beer for which he had not paid. An employee of the store followed Watson to his car, repeatedly telling Watson that he needed to pay for the beer. Watson twice responded, "Is it worth your life?" CP at 184. When the employee continued to follow him, Watson told the employee, "If you follow me, I'll kill you." CP at 184. On the same day, Watson walked out of another store with unpaid beer. When a store employee confronted Watson, he responded, "The beer is not worth your life." CP at 184.

These undisputed facts show that Watson took personal property in the employee's presence, against his or her will, by threatening to use immediate force, violence, or fear of injury

---

[7] The State conceded, and the trial court accepted, Watson's version of the Utah statute as it was in 1999 when Watson was first charged with the crime.

to the employee. RCW 9A.56.190. Therefore, the facts underlying Watson's Utah conviction for attempted robbery would have violated the Washington statute for robbery in the second degree.

Because the two offenses are factually comparable, the trial court correctly found that the Utah attempted robbery conviction was a most serious offense and did not err in imposing a persistent offender sentence.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Bjorgen, C.J.

Lee, J.