

**FILED**
**JULY 11, 2024**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39532-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FERNANDO SIFUENTEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Fernando Sifuentez was convicted of second degree assault and unlawful possession of a firearm. He appeals his convictions, claiming ineffective assistance of counsel and cumulative errors deprived him of a fair trial. Mr. Sifuentez further challenges the trial court's imposition of the victim penalty assessment (VPA) and DNA collection fee.

We affirm Mr. Sifuentez's convictions but remand for the trial court to strike the VPA and DNA collection fee from the judgment and sentence.

BACKGROUND

Mr. Sifuentez and Christine Olsen began a relationship in fall 2021. Shortly thereafter, Mr. Sifuentez moved into Ms. Olsen's home. Sometime between Thanksgiving and December 3, 2021, their relationship ended. On December 3, the date that elicited Mr. Sifuentez's charges, Ms. Olsen was away from her home. Present at her home were her brother, her mother, Debra Olsen,[1] as well as a roommate, Blanca Jacquez, and a friend Anna Dalton. Ms. Olsen placed Ms. Jacquez in charge of the house while she was away.

Shortly before 6:00 p.m., Ms. Dalton called 911 to report "an unwanted guest in the house and he's abusive," "an abusive ex to my friend and they have already had police contact." Rep. of Proc. (RP) at 154; Ex. 2, 4 sec. to 9 sec.; 1 min., 0 sec. to 1 min., 6 sec. Ms. Dalton reported that Mr. Sifuentez had snuck into the house, had a shotgun, cocked it, and was pointing it at someone. Ms. Dalton clarified to 911 that another person had narrated the information to her.

In response to the 911 call, Officer Cody Albertin responded to Ms. Olsen's address. Upon arrival, Officer Albertin obtained statements from Ms. Dalton, Ms. Jacquez, and Debra. Officer Albertin described both Ms. Dalton and Ms. Jacquez as

---

[1] Debra Olsen is referred to by her first name for clarity. No disrespect is intended.

"disturbed," "in shock," and "definitely afraid." RP at 215. The officer reported Debra's demeanor as very odd.

Mr. Sifuentez was later charged with second degree assault and unlawful possession of a firearm in the second degree. The trial court issued a warrant for Mr. Sifuentez's arrest. On January 3, 2022, Officer Jimmy George contacted Victor Sifuentez,[2] Mr. Sifuentez's father, and requested permission to search his apartment for Mr. Sifuentez. Victor consented. When officers entered Victor's apartment, they found Mr. Sifuentez hiding in a dark corner of the kitchen. Thereafter, the officers searched the apartment and found a loaded 12-gauge shotgun, a large black suitcase, and documents containing Mr. Sifuentez's name. According to Officer George, the shotgun "was spray painted kind of like Army green and black" and had a black pistol grip. *Id*. at 225.

In advance of trial, the court granted Mr. Sifuentez's motion to exclude evidence of domestic violence Mr. Sifuentez may have committed against Ms. Olsen. Mr. Sifuentez also moved to exclude the recording of Ms. Dalton's call to 911. The trial court listened to a recording of Ms. Dalton's call, made on December 3, as well as a call Ms. Jacquez made to 911 on December 2. The trial court found Ms. Jacquez's call was not relevant and ordered it excluded from admission. Relying on the excited utterance

---

[2] Victor Sifuentez is referred to by his first name for clarity. No disrespect is intended.

and present sense impression exceptions to the hearsay rule, the trial court allowed for the admission of Ms. Dalton's call.

At trial, Ms. Dalton's call was admitted into evidence and published to the jury. At the conclusion of the recording, defense counsel objected to Ms. Dalton's statements that described Mr. Sifuentez as abusive and that referenced a prior altercation where Mr. Sifuentez and Ms. Olsen had police contact. The court seemed puzzled that defense counsel did not object to the alleged prejudicial statements during the motions in limine, but granted Mr. Sifuentez's motion to strike the statements and to provide a curative instruction to the jury. The judge orally instructed the jury:

> You heard evidence as to an alleged prior domestic violence. I've ruled that that evidence is inadmissible. Do not speculate as to the reason for my ruling. You are instructed to disregard that evidence and not consider it in your deliberations, the portion about the domestic violence, okay?

*Id.* at 161.

Ms. Jacquez testified that Ms. Olsen was not at the house on the evening of December 3 because she went to "stay at a safe place." *Id.* at 174. She testified that while in a room with Ms. Dalton, she heard Mr. Sifuentez's voice. When Ms. Jacquez left the room to investigate, Mr. Sifuentez pointed a "gray and black[ . . . l]ike a greenish" gun at her and cocked it. *Id.* at 175. Upon being presented a photograph of the shotgun found in Victor's apartment, Ms. Jacquez identified it as the gun Mr. Sifuentez had pointed at her. Ms. Jacquez testified she was able to go back into her room and found

Ms. Dalton under the bed on the phone with 911. She then relayed to Ms. Dalton what

had occurred.

The State inquired of Ms. Jacquez whether Mr. Sifuentez had returned to the

house at any point after December 3. In response, Ms. Jacquez provided an answer that

was unresponsive to the question:

> [MS. JACQUEZ]: He came to drop off some cats that belonged to them.
> That—anyways, that's another story that's irrelevant . . . .
>
> [STATE]: Okay.
>
> [MS. JACQUEZ]: And *he had a gun* on his—on his like belt or—I don't
> know what he was holding . . . .
>
> [STATE]: Okay.
>
> . . . .
>
> [MS. JACQUEZ]: I know it's *smaller than the one you showed me*
> (indicating).
>
> [STATE]: The State has no further questions, your Honor.

*Id*. at 179-80 (emphasis added).

On cross-examination, defense counsel challenged Ms. Jacquez's trial testimony

against previous statements she had provided to law enforcement and statements given in

a defense interview. Specifically, at trial Ms. Jacquez testified the gun was "gray and

black[ . . . l]ike a greenish." *Id*. at 175. In a December 3 written statement, Ms. Jacquez

described the gun as "gray with [a] black handle." *Id*. at 202. Similarly, during a defense

interview Ms. Jacquez recalled describing the gun as "gray and black." *Id*. at 203.

Additionally, in response to a question from defense counsel, Ms. Jacquez admitted she

had stated during the defense interview that she told the officers that Mr. Sifuentez was "looking for some man" on December 3, not Ms. Olsen as she had earlier testified. *Id*. at 204.

Officer John McCauley testified that Mr. Sifuentez stated during an interview that he had found the shotgun in the suitcase, admitted to handling it, and to placing it under the bed. Mr. Sifuentez also admitted to being at Ms. Olsen's residence in early December. Mr. Sifuentez implied that his mother was at Ms. Olsen's residence and would confirm that he did not have a firearm during the incident.

Detective Dan Long testified that Mr. Sifuentez had suggested to him that he may have been in Spokane visiting a friend on December 3. However, Mr. Sifuentez was unable to provide Detective Long with his friend's address or phone number.

During deliberations, the jury requested permission to listen to Ms. Dalton's call to 911. The court granted the request, but directed the bailiff to read the curative instruction to the jury before playing the recording.

Ultimately, the jury convicted Mr. Sifuentez as charged. During sentencing, defense counsel argued that Mr. Sifuentez was indigent and asked the court to impose only the mandatory legal financial obligations. In response, the court waived the criminal filing fee and the court-appointed attorney fee. The court ordered Mr. Sifuentez to pay the then-mandatory DNA collect fee and the VPA.

Mr. Sifuentez timely appeals.

ANALYSIS

On appeal, Mr. Sifuentez argues he was afforded ineffective assistance of counsel, that cumulative errors deprived him of a fair trial, and that the trial court improperly ordered the DNA collection fee and VPA.

I. WHETHER MR. SIFUENTEZ'S TRIAL COUNSEL WAS INEFFECTIVE

Mr. Sifuentez contends he was afforded ineffective assistance of counsel based on his trial attorney's failure to request the "abusive" comments be redacted from the 911 recording and his attorney's failure to object to Ms. Jacquez's unsolicited statement that Mr. Sifuentez possessed a smaller gun on a subsequent occasion. Br. of Appellant at 13-14.

Defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). A claim of ineffective assistance of counsel is an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Ineffective assistance of counsel claims are reviewed de novo. *State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310 (1995). In reviewing the record, "Courts engage in a strong presumption counsel's representation was effective." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

To succeed on an ineffective assistance of counsel claim, a defendant bears the burden of showing (1) that their counsel's performance fell below an objective standard

of reasonableness based on consideration of all the circumstances and, if so, (2) that there is a reasonable probability that but for counsel's poor performance, the outcome of the proceedings would have been different. *Id*. at 334-35. If either element is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). On appeal, "[i]f a defendant [appellant] centers their claim on ineffective assistance of counsel on their attorney's failure to object, then 'the defendant must show that the objection would likely have succeeded.'" *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021) (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019)).

The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). Defense counsel's actions will not be viewed as ineffective or deficient when their conduct can be classified as a legitimate trial strategy or tactic. *Kyllo*, 166 Wn.2d at 863. "A classic example of trial tactics is when and how an attorney makes the decision to object during trial testimony." *Vazquez*, 198 Wn.2d at 248 (citing *State v. Madison*, 53 Wn. App. 754, 762-63, 770 P.2d 662 (1989)). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *Id.* at 250 (quoting *Crow*, 8 Wn. App. 2d at 508).

If there are legitimate trial tactics involved, "[a] few or even several failures to object are not usually cause for finding that an attorney's conduct has fallen below the

objective standard of conduct." *Id*. However, defense counsel's failure to object to inadmissible evidence will result in reversal only if a defendant can show the outcome of the trial would likely have been different without the inadmissible evidence. *Id*. at 248-49.

Even if a defendant can show counsel's performance was deficient, they must also affirmatively prove prejudice. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). This requires more than simply showing that "the errors had some conceivable effect on the outcome." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant demonstrates prejudice by showing that the proceedings would have been different but for counsel's deficient representation. *McFarland*, 127 Wn.2d at 337.

### A. TRIAL COUNSEL'S FAILURE TO REQUEST REDACTION OF THE "ABUSIVE" COMMENTS

Mr. Sifuentez contends his trial attorney was ineffective for failing to request redaction of the "abusive" statements from the 911 recording. Although we agree defense counsel's performance was deficient, Mr. Sifuentez is unable to show prejudice.

The trial court granted Mr. Sifuentez's motion to exclude prior acts of domestic violence he may have committed against Ms. Olsen. In Ms. Dalton's call to 911, she described Mr. Sifuentez as "abusive" (Ex. 2, at 9 sec.) and "an abusive ex to my friend." *Id*. at 1 min. to1 min., 5 sec. Ms. Dalton added, "they have already had police contact."

9

*Id.* at 1 min., 4 sec. to 1 min., 7 sec. Because the statements related to a subject matter that was earlier excluded from evidence, the trial court certainly would have ordered the redaction of the prejudicial statements from the recording had a request been made.

Albeit defense counsel sought exclusion of the entire recording, considering the trial court excluded evidence of Mr. Sifuentez's prior act of domestic violence against Ms. Olsen, it was unreasonable for defense counsel not to seek redaction of the prejudicial statements. Consequently, defense counsel was deficient in failing to request redaction of the "abusive" statements from the recordings.

However, to succeed on appeal, Mr. Sifuentez must still establish prejudice. In other words, Mr. Sifuentez has the burden of demonstrating that had the jury not heard the "abusive" comments, the outcome of the trial likely would have been different. In an attempt to establish prejudice, Mr. Sifuentez contends the curative instruction was "insufficient to mitigate the prejudice of the evidence that [he] was an abusive person" and that Ms. Jacquez suffered credibility problems. Br. of Appellant at 16.

Absent a showing to the contrary, juries are presumed to follow curative instructions. *State v. Davenport*, 100 Wn.2d 757, 763-64, 675 P.2d 1213 (1984). Because juries are presumed to follow curative instructions, Mr. Sifuentez bears the burden of rebutting the presumption with a contrary showing. Mr. Sifuentez contends the 911 recording was important to the jury's decision-making because they requested to

10

listen to the recording during deliberations, allowing them to hear the inadmissible statements a second time, and because the State's case was not strong.

The record does not show the jury considered the improper evidence it was twice instructed to disregard. Because there is no showing that the jury considered the inadmissible evidence in reaching its verdicts, Mr. Sifuentez has not overcome the presumption that the jury followed the instructions.

As to the strength of the State's case, Mr. Sifuentez argues that the State's case was weak due to Ms. Jacquez's lack of credibility. Specifically, Mr. Sifuentez alleges Ms. Jacquez gave varying accounts of the color of the shotgun, that she testified that Mr. Sifuentez was looking for Ms. Olsen on December 3 after earlier telling defense counsel that Mr. Sifuentez was looking for a man, and in testifying that Mr. Sifuentez broke into the home after previously telling defense counsel he had used a key.[3]

"Credibility determinations are reserved for the trier of fact," and an appellate court "'must defer to the [trier of fact] on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence.'" *State v. Rafay*, 168 Wn. App. 734, 843, 285 P.3d 83 (2012) (alteration in original) (quoting *State v. Liden*, 138 Wn. App. 110,

---

[3] As it relates to the means by which Mr. Sifuentez entered the home, Ms. Jacquez did not admit to making a prior inconsistent statement. Ms. Jacquez testified that Mr. Sifuentez "broke in." RP at 202. When asked if she remembered ever telling the police Mr. Sifuentez had used a key, Ms. Jacquez responded, "No, I don't remember that." *Id*.

11

117, 156 P.3d 259 (2007)).  The jury was able to decide the weight to be given to Ms.

Jacquez's testimony after considering the prior inconsistent statements.

Mr. Sifuentez has failed to establish a reasonable probability that the outcome of

the trial would have been different but for his trial counsel's failure to request a redaction

of the recording.

B.     FAILURE TO OBJECT TO AND MOVE TO STRIKE UNRESPONSIVE
       TESTIMONY

Mr. Sifuentez contends his counsel was ineffective for failing to object to Ms.

Jacquez's unsolicited comment that he had possessed a smaller gun on a subsequent

occasion.  Mr. Sifuentez asserts the testimony was irrelevant under ER 402 and

inadmissible propensity evidence under ER 404(b).

Evidence that Mr. Sifuentez possessed a smaller gun on a subsequent visit to Ms.

Olsen's house was irrelevant and therefore inadmissible.  Because the evidence was

inadmissible, had defense counsel objected, the trial court likely would have sustained the

objection.  However, in recognizing the strong presumption that defense counsel's

representation was effective, the failure to object to the unresponsive remark does not

amount to an egregious circumstance warranting reversal.  Indeed, defense counsel's

decision not to object was a legitimate trial tactic.

The challenged comment was unresponsive to the State's question, "Did he come

back to the house at any point?"  RP at 179.  Unelicited by the State, Ms. Jacquez gave a

lengthy answer primarily concerning cats only to conclude with, "[H]e had a gun on his—on his like belt" "smaller than the one you showed me." *Id*. at 180. The State did not inquire any further and the jury was dismissed for the day. Defense counsel could reasonably have decided not to object in order to avoid emphasizing the testimony only for the jury to be instructed to disregard the testimony. Because the decision not to object was a legitimate trial strategy, defense counsel's performance was not deficient.

Even if defense counsel was deficient in failing to object, Mr. Sifuentez has failed to establish he was prejudiced by the deficiency. Mr. Sifuentez cites *State v. Freeburg* for the proposition that "[e]vidence of weapons is highly prejudicial, and courts have 'uniformly condemned . . . evidence of . . . dangerous weapons, even though found in the possession of a defendant, which have nothing to do with the crime charged.'" 105 Wn. App. 492, 501, 20 P.3d 984 (2001) (alterations in original) (quoting *United States v. Warledo*, 557 F.2d 721, 725 (10th Cir. 1977)). However, even if the irrelevant evidence that Mr. Sifuentez carried a smaller gun on a subsequent occasion was considered, he must still demonstrate prejudice.

The unsolicited gun comment was not central to the State's case. The State presented numerous witnesses, physical evidence, and statements made to law enforcement officers by Mr. Sifuentez. Further, defense counsel reminded the jury during summation that they could find Mr. Sifuentez guilty only if they believed he possessed a shotgun on December 3.

13

Mr. Sifuentez has failed to demonstrate that his trial counsel's failure to object was not a legitimate trial strategy. Even if defense counsel was deficient in failing to object, Mr. Sifuentez has failed to establish a reasonable probability the outcome of the trial would have been different but for trial counsel's failure to object.

Mr. Sifuentez was not afforded ineffective assistance of counsel.

II.       CUMULATIVE ERRORS

Mr. Sifuentez argues that the cumulative effect of the errors deprived him of a fair trial. Because there is an absence of prejudicial errors, we disagree.

"'The cumulative error doctrine applies where a combination of trial errors denies the accused of a fair trial, even where any one of the errors, taken individually, would be harmless.'" *Rookstool v. Eaton*, 12 Wn. App. 2d 301, 310, 457 P.3d 1144 (2020) (quoting *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014), *abrogated in part on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018)). To determine whether cumulative errors necessitate reversal of a defendant's conviction, courts contemplate whether "'the totality of circumstances substantially prejudiced the defendant and denied him a fair trial.'" *Id.*

Mr. Sifuentez contends that "[c]ounsel's separate ineffectiveness described . . . built upon each other augmenting their prejudicial effect." Br. of Appellant at 24. Having concluded that no prejudicial errors exist, Mr. Sifuentez's argument fails.

14

III.     LEGAL FINANCIAL OBLIGATIONS

Mr. Sifuentez contends that due to recent changes in the law, the VPA and the DNA collection fees must be struck from his judgment and sentence. The State concedes. We accept the State's concession.

Formerly, RCW 7.68.035(1)(a) (2016) required the imposition of a VPA on any adult found guilty of a crime in superior court. On July 1, 2023, an amendment to RCW 7.68.035 went into effect, requiring trial courts to refrain from imposing a penalty assessment if, at the time of sentencing, the defendant was found to be indigent as defined in RCW 10.01.160(3). *See* LAWS OF 2023, ch. 449, §§ 1, 4. Amendments to statutes that impose costs upon conviction apply to cases pending on appeal. *See In re Per. Restraint of Eastmond*, 173 Wn.2d 632, 638, 272 P.3d 188 (2012); *State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018).

Similarly, under former RCW 43.43.7541 (2018), a sentencing court was required to impose a DNA collection fee on every sentence imposed for the crimes specified in RCW 43.43.754. Effective July 1, 2023, the legislature amended RCW 43.43.7541 by removing language that authorized imposition of the DNA collection fee. *See* LAWS OF 2023, ch. 449, § 4.

Mr. Sifuentez's case is pending on direct appeal and is not yet final. Although the sentencing court did not check the indigency box on the judgment and sentence, it seemed to have found him to be indigent based on its decision to impose only mandatory

legal financial obligations. Therefore, the amended statutes apply. We direct the trial court to strike the VPA and DNA collection fee from the judgment and sentence.

## CONCLUSION

Mr. Sifuentez's trial attorney was not deficient in her performance. In concluding defense counsel was not ineffective, Mr. Sifuentez's cumulative error argument fails. We remand to the trial court to strike the VPA and DNA collection fee from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Staab, J.

16